James E. STORM, Appellant (Defendant below),

v.

Delores STORM, Appellee (Plaintiff below).

No. 3818.

Supreme Court of Wyoming.

June 11, 1970.

William H. Brown and B. J. Baker, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellant.

Cecil K. Hughes, of Reynolds & Hughes, Sundance, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The appeal here involved questions the right of the trial court, upon the granting of a divorce, to make a lump sum cash award of $100,000 to the wife, in settlement of alimony and property rights.

Suit was brought by Delores Storm against her husband, James E. Storm. She was given custody of the three minor children of the parties and the husband was ordered to pay $300 per month for their support. The husband was also required to pay $1,500 for plaintiff's attorney fees and to pay his wife the sum of $100,000 on or before four years after August 1, 1969. The decree further required the husband to pay the wife, in addition to child-support

payments, $425 per month until the entire lump sum of $100,000 is paid.

According to the husband's testimony and figures, the property owned by the parties and subject to division by the court had a net worth of $62,112.99. Although counsel for the plaintiff-wife questions some of the values used by defendant, no substantial evidence was offered by plaintiff which would justify the use of different values. Indeed, in his argument to us, counsel for appellee uses the figures and values fixed by defendant.

The controversy stems from the fact that the husband, at the time of the divorce, was coming into an inheritance from his father. Counsel for appellant terms this inheritance as a "prospective" but "contingent" interest by inheritance. The property in dispute consists of an undivided one-half interest in a ranch. It seems to be undisputed that the worth of the ranch was $396,090. For purposes of our decision we will consider defendant's half worth $198,045, although we realize an undivided interest in property cannot always be sold for half of the full value because control has to be shared with another.

The disputed ranch property had been left by defendant's father in a testamentary trust, with income from the ranch to be paid to appellant and his sister for a period of ten years from the date of their father's death. At the end of ten years, which was July 26, 1969, the ranch was to be set over to appellant and his sister "or the survivor of them" in equal undivided interests—or one-half to each. It is to be noted that defendant's share was not to come into being unless defendant was living on July 26, 1969.

Plaintiff commenced her action for divorce March 11, 1969. Trial was had on her complaint June 25, 1969. On July 8, 1969 the trial judge announced his decision by letter to counsel for the respective parties. This letter was filed with the clerk of the district court the next day. The de-

cree of divorce was dated August 8, 1969 and was entered August 11, 1969.

It will be observed from our review of dates that defendant had not come into ownership or possession of the one-half interest in his father's ranch when plaintiff commenced her action for divorce; nor when trial was had; nor when the judge arrived at and announced his decision. The letter of decision instructed plaintiff's attorney to prepare a decree embodying the provisions which the judge had already directed. The record does not show whether the delay in entering the final decree was the fault of the judge or of counsel for plaintiff.

We think it immaterial, however, who caused such delay. It would be unthinkable that a mere delay in entering a decree already decided upon would make the difference in whether a party to divorce does or does not share in $198,045 worth of property.

Section 20–63, W.S.1957, authorizes a court, in granting a divorce, to make such disposition of the property of the parties as shall appear just and equitable. The question arises as to whether the legislature intended the term "property of the parties" to apply only to property which has some relation to the marriage, either by being owned at the time of the marriage contract or by being acquired during coverture; or did it intend to include property which one of the parties can expect to come into in the future?

Regardless of what the legislature had in mind when it used the term "property of the parties," the term "as shall appear just and equitable" is sufficiently controlling for purposes of this case. The use of such language makes it unnecessary for us to cite case authority for the proposition that disposition of the property of the parties is an equitable function of the court.

The matter being one of equity and not strict legal interpretation, it becomes immaterial that the decree in this case was actually entered a few days after the husband came into his inheritance. As far as

equitable considerations are concerned, the action for divorce was commenced; the trial was had; and the decision of the court was announced when defendant did not own a half interest in his father's ranch. There was indeed the possibility of defendant not surviving to inherit his half interest.

The supreme court of Washington stated, in Lockhart v. Lockhart, 145 Wash. 210, 259 P. 385, 386, that it is not the policy of the law, nor is it either just or equitable, for a divorced wife to be given a perpetual lien on her divorced husband's future earnings. It would be just as unjust and inequitable for Mrs. Storm in this case to be given a share in her divorced husband's future inheritance, as far as a division of property is concerned.

The Washington court saw fit to express itself thusly in the *Lockhart* case:

"She [the wife] has chosen to go her own way, to abandon all the obligations she assumed by her marital vows, and it is only under the most unusual circumstances that she can rightfully call upon him [her divorced husband] to continuously contribute to her support."

In more recent cases the Washington supreme court has recognized that all property of the parties, separate or community, is before the court for just and equitable division when a divorce is granted. Yet it continues to say only in exceptional circumstances is a court warranted in awarding to a spouse part or all of the separate property of the other spouse. Merkel v. Merkel, 39 Wash.2d 102, 234 P.2d 857, 864; Morse v. Morse, 42 Wash.2d 229, 254 P.2d 720, 721; Browning v. Browning, 46 Wash.2d 538, 283 P.2d 125, 128.

In a number of states the power of courts to assign property on the dissolution of marriage is limited to community property and the homestead; and courts are not authorized to assign separate property of one spouse to the other, nor to require one to pay to the other any amount in lieu of an assignment or division of property. Confining ourselves to the Pacific Report-

er only, we find the following states included in this category: California, Arizona, Idaho, Nevada, and New Mexico.

The following cases appear to verify, for the states listed, the rule we have mentioned: Fox v. Fox, 18 Cal.2d 645, 117 P. 2d 325, 326; Armstrong v. Armstrong, 71 Ariz. 275, 226 P.2d 168, 170; Heslip v. Heslip, 74 Idaho 368, 262 P.2d 999, 1001–1002; Thorne v. Thorne, 74 Nev. 211, 326 P.2d 729, 730; and LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755, 756.

Montana has no community property law; but it has been held the statutes of that state do not confer power on the courts in divorce cases to divest the title of a husband to specific property or to order an involuntary assignment thereof to the wife. Emery v. Emery, 122 Mont. 201, 200 P.2d 251, 264. See also Tolson v. Tolson, 145 Mont. 87, 399 P.2d 754, 757.

In Oklahoma it has been held that, in a statute providing for equitable division of property in a divorce proceeding, the division contemplated relates solely to "jointly acquired property." Funk v. Funk, Okl., 319 P.2d 599, 601.

As previously indicated, the statutory rule in Wyoming is that a court granting a divorce shall make such disposition of the "property of the parties" as shall appear just and equitable. In determining what is just and equitable, it is proper to consider procedures followed in sister states. Generally speaking, it would seem the property divided should have a relation to the marriage in such a way that it could be reasonably considered a part of the marital estate. Within the bounds of equity, we find no such relation between the Storm marriage and the inheritance which the husband was about to come into at the time of the divorce.

■ Equitably speaking, it is reasonable to consider the inheritance under consideration the same as future property. With respect to future property, we think the rule must be that, when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and a mere expectancy is not subject to division. Hill v. Hill, 82 Cal.App.2d 682, 187 P.2d 28, 36.

■ Inasmuch as the divorce in this case was sought several months before defendant's expectancy matured; and inasmuch as trial was had and the decision of the court announced before defendant inherited a half interest in his father's ranch, the inheritance must, in equity, be considered the same as future property regardless of the exact date of the entry of the final decree. It would not be "just and equitable" to consider such property a part of the marital estate and in the hands of the court for disposition.

■ In speaking of future property, we are referring to a prospective expectancy of an estate which may come into being in the future as distinguished from future benefits to be derived from an estate already in existence. Courts have frequently distinguished between assets earned during coverture and those to be acquired in the future.

For example, in French v. French, 17 Cal.2d 775, 112 P.2d 235, 236–237, 134 A. L.R. 366, it was held pay which the husband would receive in the future as a member of the Fleet Reserve of the Navy for future services was not a "pension" and was not subject to division. On the other hand, pay received up to the dissolution of the marriage was community property and subject to division.

It was recognized in Morris v. Morris, 69 Wash.2d 506, 419 P.2d 129, 130–131; and in LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755, 756, that only that portion of military and naval retirement pay earned "during coverture" was community property and subject to division upon the granting of a divorce.

And in Beaulac v. Beaulac, 84 Cal.App. 2d 649, 191 P.2d 478, 480, it was said an award to the husband of $450 out of $900 earned by the wife after separation was erroneous.

In past cases we have distinguished between cash payments which are to be considered as alimony and those which in reality constitute a property settlement. Warren v. Warren, Wyo., 361 P.2d 525, 527–528. It is clear from the amount of property involved in this case that the trial court intended the lump sum award of $100,000 for the wife to come in a substantial way, from the one-half interest which Storm was inheriting from his father.

This was made clear in the judge's letter which announced his decision. In that letter the judge stated, "a property division Order will be made in lieu of alimony." The judge also referred to the claim of defendant that the half interest in land which "will come" to defendant during the month of July cannot be considered in a property settlement. Of such claim the judge stated, "the court disagrees and feels that it can be considered in the overall picture with certainly a bearing" on what the value of the property will be after that date (July 26, 1969).

■ We hold it improper, under the circumstances of this case, for the court to have awarded to plaintiff a share in the one-half interest which defendant was inheriting in his father's ranch. And of course, it was equally improper for the court to require defendant to pay plaintiff money in lieu of a share in the one-half undivided interest in the father's ranch.

■ In making a just and equitable settlement it must be kept in mind, as indicated in Beckle v. Beckle, Wyo., 452 P.2d 205, 208, that judicial discretion should not be so exercised as to reward one party and punish the other. Porter v. Porter, 67 Ariz. 273, 195 P.2d 132, 140.

■ Therefore, in the light of what we have indicated above, it is our conclusion that a just and equitable property settlement is for plaintiff to have approximately an equal share with her husband in all property which the wife has had a part in accumulating, including property if any, and proceeds therefrom, which may have been owned by either party at the time of marriage. In the absence of substantial evidence on the part of plaintiff as to property values, we must accept values set in the appraisals offered by defendant.

■ Inasmuch, then, as the evidence shows the net value of property owned, exclusive of defendant's interest in his father's ranch, to be $62,112.99; we conclude defendant should be required to pay plaintiff, in property settlement, the sum of $30,000. Such sum should be paid in cash within 90 days from the date of our mandate to the district court. The wife has been awarded furniture and a Chevrolet automobile by the district court. We would not disturb these awards.

■ Section 20–63, W.S.1957, provides the court may also decree to the wife reasonable alimony out of the estate of the husband, having regard for his ability. We are, of course, mindful that plaintiff will have minor children to care for which will limit her ability to earn. Having regard for this situation and the husband's ability, we conclude defendant should be required to pay plaintiff alimony in the amount of $425 per month, commencing on the date of our mandate to the district court and continuing until the wife dies or remarries, or until otherwise ordered by the district court on account of changed circumstances.

Our instructions to the district court are to modify its decree by deleting therefrom the requirement for defendant to pay plaintiff a cash lump sum of $100,000 and the requirement to pay plaintiff $425 per month until the entire lump sum of $100,000 is paid. Also the provision for a lien to secure payment of the $100,000 shall be deleted.

In lieu of the provisions deleted, provisions are to be added to require defendant to pay plaintiff $30,000 in cash, within 90 days from the date of our mandate; and to require defendant to pay plaintiff alimony in the amount of $425 per month for the period of time we have indicated above. Other provisions of the decree, in-

cluding those relating to custody, child-support payments, furniture, personal effects, tools, and Chevrolet automobile, shall remain unchanged.

Appellee has requested an allowance for additional attorney fees in connection with the appeal in our court. We do not pretend to set the amount of fees counsel is entitled to charge, but we think it proper to require defendant to pay an additional sum to plaintiff's attorney of $500. The district court should therefore add a further provision to its decree to require such payment within 60 days from the date of our mandate.

Remanded for the modifications indicated.